IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MONTE L. LOW,

       Plaintiff,                No. 2:10-cv-01624 JAM KJN PS

    v.

THE CITY OF SACRAMENTO;
POLICE CHIEF RICK BRAZIEL;
CAPT. SCOTT LACOSSE; LT. NEIL
SCHNEIDER; OFFICER KHANG
BADGE #240; AND KHANG'S
OFFICER/PARTNER ON THE
EVENING OF 01/11/2008,

       Defendants.          <u>ORDER AND FINDINGS AND
RECOMMENDATIONS</u>

_____/

       Presently before the court is a motion to dismiss and strike plaintiff's Third

Amended Complaint, which was filed by the following defendants: the City of Sacramento

("City"), Rick Braziel, Scott LaCosse, Neil Schneider, and "Officer Khang."[1]  (Mot. to Dismiss

& Strike, Dkt. No. 18.)  Because oral argument would not materially aid the resolution of the

pending motion, this matter was submitted on the briefs and record without a hearing.  <u>See</u> Fed.

R. Civ. P. 78(b); E. Dist. Local Rule 230(g).  The undersigned has considered the briefs and the

---

[1]  This action proceeds before the undersigned pursuant to Eastern District of California
Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).

1    appropriate portions of the record in this case and, for the reasons stated below: (1) denies

2    defendants' request for judicial notice as moot, and (2) recommends that defendants' motion be

3    granted, and (3) that plaintiff's Third Amended Complaint be dismissed with prejudice.

4    I.       BACKGROUND

5             A.       Plaintiff's Third Amended Complaint

6                      Plaintiff's Third Amended Complaint alleges violations of 42 U.S.C. §§ 1983 and

7    1985(2).  (See Third Am. Compl., Dkt. No. 15.)  Generally, plaintiff's claims arise from his

8    arrest for public intoxication on January 11, 2008, an off-duty officer's alleged physical assault

9    of plaintiff during the arrest, and plaintiff's detention in the Sacramento County jail thereafter.

10   (See id. at 3, 6-20.)  Plaintiff alleges that he is a resident of Sacramento, California.  (Id. ¶ 2.)  He

11   further alleges that "defendants, with the exception of the City of Sacramento and the off-duty

12   police officer (attacker), are or were employed by the City of Sacramento on the date of January

13   11, 2008, and work or worked for the City of Sacramento Police Department."  (Id. ¶ 3.)

14                     Plaintiff alleges that on or about January 11, 2008, he was "attacked, and severely

15   beaten by a man at or near 7465 Rush River Drive, Sacramento, California."  (Third Am. Compl.

16   ¶ 6.)  Plaintiff further alleges that "the attacker without warning pushed [plaintiff] through the

17   door of the Mountain Mike's Pizza restaurant . . . and tried to stomp plaintiff's head into the

18   ground."  (Id.)  In somewhat of a contradictory allegation, plaintiff alleges that he bounced off of

19   the door and landed on his head and back, at which time the alleged attacker attempted to stomp

20   his right foot downward toward plaintiff's head.  (Id. ¶ 7.)  Plaintiff alleges that during the attack,

21   the "attacker yelled, 'I'm an off-duty police officer!'"  (Id.)

22                     Plaintiff alleges that he deflected the assailant's foot, sprang to his feet, and then

23   ran to a nearby supermarket "to avoid further violence and to summon aid."  (Third Am. Compl.

24   ¶ 8.)  He further alleges that two Sacramento City Police Department officers arrived at the

25   ////

26   ////

2

1  supermarket.[2]  (Id. ¶ 10.)  Plaintiff further alleges that although he was "severely injured in the

2  attack, the Sacramento City Police Officers refused to take a complaint from the plaintiff, refused

3  to examine or document his injuries, refused to let him identify his attacker, handcuffed him

4  without explanation, did not read him his rights, and did not tell plaintiff where he was being

5  taken."  (Id. ¶ 11.)  The responding officers allegedly asked plaintiff three questions: "How much

6  have you had to drink?  Have you taken any drugs?  Have you used any inhalants?"  (Id. ¶ 12.)

7  Plaintiff allegedly responded that he had consumed six beers between 1:00 p.m. and 8:00 p.m.

8  that day, and he told Officer Kang that "he does not use drugs or inhalants."[3]  (Id.)  Plaintiff

9  alleges that he was not given a "sobriety test," but later found out that "he was accused of using

10  (huffing) a substance known as toluene."[4]  (Id. & Exs. G, J.)

11          Plaintiff alleges that he was frightened by the officers' actions and believed that

12  the officers were "conspiring to cover up the attempt on his life."  (Third Am. Compl. ¶ 13.)  He

13  alleges that while he was being loaded into the police car, he asked: "Are you going to finish the

14  job?"  (Id.)  He further alleges that having received no response to his query, he asked but

15  received no response to the following question: "Are you going to kill me?"  (Id.)  Plaintiff

16  alleges that while he was in the police car, he "raised his voice and said, 'Great, I'm going to be

17  killed by the police!"  (Id. ¶ 14.)  Plaintiff alleges that Officer Khang stated that plaintiff had

18  "screamed that he wanted to be killed by a police officer."[5]  (Id.)  Plaintiff disputes that he stated

19

20  _____

    [2]  Plaintiff does not clearly identify which defendants comprise the two responding officers.
21  It appears that defendant Khang is alleged to be one of the officers.  (See Third Am. Compl. ¶ 12.)

22      [3]  The Sacramento Sheriff's Department Receiving Screening Form attached as Exhibit A
    to the Third Amended Complaint suggests that plaintiff might have been consuming vodka, not beer.

23      [4]  Toluene is a "colourless liquid hydrocarbon resembling benzene, present in coal tar and
24  petroleum."  Oxford Concise English Dictionary 1507 (Judy Pearsall ed., Oxford Univ. Press, 10th
    ed. 1999).

25      [5]  A form entitled Sacramento Police Department Adult Inebriate Arrest/Patient Form, which
    is attached as Exhibit B to the Third Amended Complaint, states, in part: "(S) CAUSED
26  DISTURBANCE AT PIZZA SHOP.  (S) ADV. HE DRANK 6 BEERS.  (S) SCREAMING THAT

1   as much.  (Id.)

2          Plaintiff alleges that he was thereafter taken to the "Sacramento County Jail," and

3   that he was given a tuberculosis test and was questioned about "health issues" by a nurse at the

4   jail.  (Third Am. Compl. ¶¶ 16-17.)  He alleges that although he told the nurse that he was

5   attacked by an off-duty police officer, the nurse "did not note the attack" on the Sacramento

6   Sheriff's Department Receiving Screening Form, did not examine plaintiff's injuries, and did not

7   note plaintiff's injuries on the form.  (Id. ¶ 17.)  Plaintiff alleges that a Sacramento Police Officer

8   forged plaintiff's signature on the Sacramento Sheriff's Department Receiving Screening Form.

9   (Id. ¶ 18 & Ex. A.)

10          Plaintiff alleges that he was "released from jail without charges on January 12,

11   2008," and that upon release he learned that he had been arrested for "public intoxication"

12   despite having been given no sobriety test.[6]  (Third Am. Compl. ¶ 21.)  He alleges that he was

13   denied medical attention in order to "hide" the attack by the off-duty officer and to prevent

14   plaintiff from documenting his blood-alcohol content.  (See id.)

15          On January 15, 2008, plaintiff allegedly attempted to file a complaint at the

16   "station for the City of Sacramento Police," but the "police refused to file the complaint for the

17   attack, and indicated that they had completed their investigation, without ever taking a statement

18   from plaintiff."  (Third Am. Compl. ¶ 22.)  Plaintiff alleges that "the defendants refused to

19   provide [him] with any information regarding his attacker, so the identity of this man remains

20   unknown to him to this day."  (Id.)

21          Plaintiff asserts that "the actions of the defendants were intentionally undertaken

22   to prevent him from discovering the identity of the off-duty police officer that attacked him, to

23

_____

24   HE WANTED TO BE KILLED BY A POLICE OFFICER.  ALL INFO PER COMP."

25     [6]  Plaintiff alleges that he "has not seen the incident report # 08-13304 despite [Public
     Records Act] requests made by the advocacy group Justice Reform Coalition on his behalf."  (Third
26   Am. Compl. ¶ 24.)

4

punish [him] for making a complaint against the officer, and to deny [him] access to justice for the crimes committed against him." (Third Am. Compl. ¶ 23.) Plaintiff alleges that he has: (1) suffered physical pain and suffering as a result of the denial of medical treatment for his injuries; (2) suffered mental pain and suffering as a result of the initial attack and the "subsequent unalleviated fear of being killed," the lack of medical treatment, and "the subsequent denial of any meaningful access to justice"; and (3) has been "denied employment due to the unfounded allegations of drug use in his arrest." (Id. ¶ 25.) Specifically as to the latter alleged injury, plaintiff alleges that in September 2008, plaintiff was sent a letter from the California Department of Corrections and Rehabilitation ("CDCR") informing plaintiff that he would no longer be considered for positions he had applied for because of allegations—provided by the Sacramento Police Department to CDCR—of inhalant usage and of what plaintiff screamed in the restaurant during the incident on January 11, 2008. (See id. ¶ 24; see also id., Ex. G (letter dated September 11, 2008, notifying plaintiff of the removal of his name from the eligibility list for positions as a "Youth Correctional Counselor/Youth Correctional Officer/Correction Officer").

Through his Third Amended Complaint, plaintiff seeks recovery for constitutional violations pursuant to 42 U.S.C. §§ 1983 and 1985. With respect to the alleged constitutional violations at issue, plaintiff alleges that: (1) his right to petition for the redress of grievances secured by the First and Fourteenth Amendments to the United States Constitution were violated as a result of retaliation by law enforcement personnel following plaintiff's complaints; (2) his Fourth Amendment rights to be free of unreasonable searches and seizures were violated by an false arrest and unlawful detention; (3) his Fourteenth Amendment due process or equal protection rights were violated because he—as a "class of one"—was treated differently than his arresting officers; and (4) his Eight Amendment rights were violated by the imposition of cruel and unusual punishment in the form of "psychological torture" and the deliberate denial of medical needs at the jail. (See Third Am. Compl. ¶¶ 27-30, 34.)

1        B.      Procedural History

2        Plaintiff filed his original complaint in California Superior Court, County of

3    Sacramento ("Superior Court"), on July 8, 2009, alleging that the City was liable for intentional

4    torts and general negligence.  (Compl., attached as an exhibit to the Notice of Removal, Dkt.

5    No. 2 at 23-30.)  On May 10, 2010, plaintiff filed a First Amended Complaint in the Superior

6    Court, which, for the first time, indicated that plaintiff was seeking relief against the City

7    pursuant to 42 U.S.C. § 1983.  (First Am. Compl., attached as an exhibit to the Notice of

8    Removal, Dkt. No. 2 at 11-15.)

9        On May 14, 2010, plaintiff filed a Second Amended Complaint in the Superior

10   Court, which sought recovery against the City for violations of 42 U.S.C. § 1983.  (Second Am.

11   Compl., attached as an exhibit to the Notice of Removal, Dkt. No. 2 at 5-9.)  As with plaintiff's

12   prior pleadings, the Second Amended Complaint did not name any individuals as defendants.  On

13   June 25, 2010, defendant removed plaintiff's action to federal court pursuant to 28 U.S.C.

14   § 1441(b).  (Notice of Removal, Dkt. No. 1.)

15       Defendant subsequently filed a motion to dismiss and/or strike plaintiff's Second

16   Amended Complaint.  (Dkt. No. 5.)  The undersigned granted the City's motion to dismiss and

17   dismissed the Second Amended Complaint without prejudice.  (Order, Sept. 17, 2010, Dkt.

18   No. 14.)  The court concluded that plaintiff had failed to allege that the City had a policy, custom,

19   or practice that would substantiate a claim for damages against the City consistent with Monell v.

20   Department of Social Services, 436 U.S. 658 (1978), and its progeny.  Plaintiff was granted leave

21   to amend his complaint.

22       On October 14, 2010, plaintiff filed his Third Amended Complaint.  Particularly

23   relevant to defendants' motions is that the Third Amended Complaint named, for the first time,

24   individual defendants, and added a new claim alleging a violation of plaintiff's Eighth

25   Amendment rights.  Plaintiff's three prior complaints did not name any individual defendants.

26   ////

II.   LEGAL STANDARDS

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009), cert. denied, 130 S. Ct. 1053 (2010).  "A complaint may survive a motion to dismiss if, taking all well-pleaded factual allegations as true, it contains 'enough facts to state a claim to relief that is plausible on its face.'"  Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949).  The court accepts all of the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff.  Corrie v. Caterpillar, 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  Paulsen, 559 F.3d at 1071 (citations and quotation marks omitted).  The court must construe a pro se pleading liberally to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity to cure them if it appears at all possible that the plaintiff can correct the defect.  See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); see also Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed, particularly where civil rights claims are involved").  In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings,

7

1    exhibits attached to the complaint, and matters properly subject to judicial notice." <u>Outdoor</u>

2    <u>Media Group, Inc. v. City of Beaumont</u>, 506 F.3d 895, 899 (9th Cir. 2007) (citation and

3    quotation marks omitted).

4           "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by

5    the applicable statute of limitations only when the running of the statute is apparent on the face of

6    the complaint." <u>Von Saher v. Norton Museum of Art at Pasadena</u>, 592 F.3d 954, 969 (9th Cir.

7    2010) (citation and internal quotation marks omitted).  A court may, however, consider judicially

8    noticeable documents in assessing the running of the statute of limitations.  <u>See</u> <u>Diaz v. Carlson</u>,

9    5 F. Supp. 2d 809, 815 (C.D. Cal. 1997), <u>aff'd</u>, 142 F.3d 443 (9th Cir. 1998); <u>Hernandez v. Sutter</u>

10    <u>W. Capital</u>, No. C 09-03658 CRB, 2010 WL 3385046, at *2 (N.D. Cal. Aug. 26, 2010)

11    (unpublished).

12           Federal Rule of Civil Procedure 12(f) provides that a district court "may strike

13    from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

14    matter."  "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and

15    money that must arise from litigating spurious issues." <u>Sidney-Vinstein v. A.H. Robins Co.</u>, 697

16    F.2d 880, 885 (9th Cir. 1983); <u>accord</u> <u>Amaral v. Wachovia Mortgage Corp.</u>, 692 F. Supp. 2d

17    1226, 1230 (E.D. Cal. 2010).  Motions to strike are generally disfavored, and this court has

18    previously stated that a motion to strike brought pursuant to Rule 12(f) "should not be granted

19    unless it is clear that the matter to be stricken could have no possible bearing on the subject

20    matter of the litigation." <u>Neveu v. City of Fresno</u>, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005)

21    (citation and quotation marks omitted); <u>see also</u> <u>Osei v. Countrywide Home Loans</u>, 692 F. Supp.

22    2d 1240, 1255 (E.D. Cal. 2010).

23    III.    <u>DISCUSSION</u>

24       A.    <u>Defendants' Request for Judicial Notice</u>

25           Defendants ask this court to take judicial notice of three documents: (1) plaintiff's

26    original complaint in this action, which plaintiff filed in the Superior Court prior to removal of

1   this action to federal court, (2) plaintiff's First Amended Complaint, which plaintiff also filed in

2   the Superior Court prior to the removal of this action to federal court, and (3) plaintiff's Second

3   Amended Complaint, which plaintiff also filed in the Superior Court prior to the removal of this

4   action to federal court.  (See Req. for Judicial Notice & Exs. A-C, Dkt. No. 18, Doc. No. 18-2.)

5   The undersigned denies defendants' request for judicial notice as moot because these three

6   pleadings are already part of the court's file as a result of the defendants' removal of this action

7   to federal court.  (See Exhibits to Notice of Removal at 5-9 (Second Am. Compl.), 11-15 (First

8   Am. Compl.), and 23-29 (Complaint), Dkt. No. 2.)

9           B.      Whether Plaintiff Was Required to Seek Leave to Add Parties and/or Claims

10                  As an initial matter, the undersigned addresses defendants' argument that the

11   claims alleged against the newly named individual defendants, i.e., all of the individual

12   defendants, should be dismissed or stricken because plaintiff was not granted leave of the court

13   to add new parties.  Defendant only cites Federal Rule of Civil Procedure 21, and cites no case

14   law applying Rule 21 in the manner suggested by defendants.

15                  Federal Rule of Civil Procedure 21 provides: "Misjoinder of parties is not a

16   ground for dismissing an action.  On motion or on its own, the court may at any time, on just

17   terms, add or drop a party.  The court may also sever any claim against a party."  It is unclear

18   why defendants believe that Rule 21 "provides that parties may only be added 'by order of the

19   court.'"  (Defs.' Mot. to Dismiss/Strike at 6.)  The text of Rule 21 does not support defendants'

20   argument.

21                  Defendants also believe that the court's order dismissing plaintiff's Second

22   Amended Complaint only permitted plaintiff to cure his claims against the City because a portion

23   of the discussion section in the order stated that plaintiff would be permitted to "cure[] the

24   pleading deficiencies in the Second Amended Complaint."  (Defs.' Mot. to Dismiss/Strike at 6;

25   Order, Sept. 17, 2010, at 8.)  The court's order is simply not as limited as defendants suggest, nor

26   was it intended to provide the basis for defendants' argument.

9

1    Defendants have alternatively moved to strike claims asserted against the newly

2    named individual defendants.  This is an impermissible use of Rule 12(f) because it seeks to use

3    Rule 12(f) as a substitute for Rule 12(b)(6).  See Yamamoto v. Omiya, 564 F.2d 1319, 1327 (9th

4    Cir. 1977) (stating that Rule 12(f) is not an authorized or a proper way to procure the dismissal of

5    all or a part of a complaint); see also Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 974

6    (9th Cir. 2010) ("Were we to read Rule 12(f) in a manner that allowed litigants to use it as a

7    means to dismiss some or all of a pleading . . . , we would be creating redundancies within the

8    Federal Rules of Civil Procedure, because a Rule 12(b)(6) motion (or a motion for summary

9    judgment at a later stage in the proceedings) already serves such a purpose.")

10    Finally, defendants move to strike the reference in the caption of the Third

11    Amended Complaint to "Khang's Officer/partner on the evening of 01/11/2008."  The

12    undersigned denies this motion to strike for the simple reason that defendants counsel does not

13    purport to represent the defendant referred to by this pseudonym.  In any event, as discussed

14    above, a motion to strike is not the proper means of attempting to have the claims asserted

15    against a defendant dismissed.

16    C.    Whether Plaintiff's Claims Against the Newly Named Defendants Are Timely

17    Defendants contend that all of the claims alleged against the newly named

18    individual defendants should be dismissed because they are barred by the two-year statute of

19    limitations applicable to claims brought pursuant to 42 U.S.C. § 1983.  (Defs.' Mot. to

20    Dismiss/Strike at 4-6.)  Plaintiff argues that his claims are subject to tolling based on a letter he

21    received on February 12, 2009.  The undersigned concludes that plaintiff's claims against the

22    newly named defendants are time-barred and recommends that these claims be dismissed with

23    prejudice.

24    Generally, with respect to individual defendants, "Section 1983 imposes civil

25    liability upon an individual who under color of state law subjects or causes, any citizen of the

26    United States to the deprivation of any rights, privileges or immunities secured by the

Constitution and laws." <u>Franklin v. Fox</u>, 312 F.3d 423, 444 (9th Cir. 2002) (citing 42 U.S.C. § 1983). "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." <u>Long v. County of L.A.</u>, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988)).

"Section 1983 does not contain a statute of limitations." <u>Fink v. Shedler</u>, 192 F.3d 911, 914 (9th Cir. 1999). Rather, the United States Supreme Court has held that although Section 1983 provides for a federal cause of action, the law of the state in which the cause of action arose governs the length of the statute of limitations. <u>Wallace v. Kato</u>, 549 U.S. 384, 387 (2007). The limitation period that a state provides for "personal-injury torts" applies to Section 1983 claims. <u>Id.</u> Under California law, the statute of limitations applicable to personal injury torts is two years.[7] <u>See</u> Cal. Civ. Proc. Code § 335.1; <u>see also</u> <u>Cantanella v. Van De Kamp</u>, 486 F.3d 1128, 1132 (9th Cir. 2007); <u>Jones v. Blanas</u>, 393 F.3d 918, 927 (9th Cir. 2004); <u>Maldonado v. Harris</u>, 370 F.3d 945, 954-55 (9th Cir. 2004).

Although state law governs the length of the applicable limitations period, federal law governs the accrual of a Section 1983 claim. <u>Wallace</u>, 549 U.S. at 388 (stating that "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law"). "Under federal law, the limitations period accrues when a party knows or has reason to know of the injury which is the basis of the cause of action." <u>Kimes v. Stone</u>, 84 F.3d 1121, 1128 (9th Cir. 1996) (citation and quotation marks omitted); <u>accord</u> <u>Johnson v. State of California</u>, 207 F.3d 650, 653 (9th Cir. 2000) (per curiam). Stated somewhat differently, the Supreme Court has explained that the standard rule is that accrual occurs when the plaintiff has

---

[7] The parties do not dispute that all of the events in question occurred in California. Plaintiff alleges that "[a] substantial part of the events giving rise to this action occurred in Sacramento City and Sacramento County, California." (Third Am. Compl. ¶ 4.)

1  "a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief."

2  Wallace, 549 U.S. at 388 (citations and quotation marks omitted).

3          Plaintiff alleges, pursuant to 42 U.S.C. § 1983, that four of his constitutional

4  rights were violated.  The undersigned addresses the accrual of each claim and the running of the

5  two-year limitations period below.

6          1.      Plaintiff's Claims Against the Individual Defendants Are Time-Barred

7          First, plaintiff alleges his Fourth Amendment rights were violated as a result of his

8  arrest after the altercation at the pizza restaurant and subsequent arrest and detention on charges

9  of public intoxication.  He contends that he should not have been arrested or detained "because

10 he was not intoxicated, there is no objective evidence of intoxication, and he was not a 'danger to

11 self' nor was he 'a danger to others[.]'"  (Third Am. Compl. ¶ 28.)  He further alleges that the

12 police officers' actions would be characterized as a "kidnaping" were police officers not

13 involved.  (Id.)  He further alleges that he was "unreasonably seized because he was not told why

14 [he was being detained], was not read his rights, was not told where he was being taken, [and]

15 was detained for over 13 hours without knowing why."  (Id.)

16         Plaintiff's claims premised on the Fourth Amendment are properly characterized

17 as claims of false arrest, unlawful seizure, and false imprisonment.  Section 1983 claims

18 premised on an alleged false arrest or illegal search and seizure generally accrue at the time of the

19 alleged false arrest or search and seizure.  See Matthews v. Macanas, 990 F.2d 467, 469 (9th Cir.

20 1993) (per curiam) ("Where false arrest or illegal search and seizure is alleged, the claim accrues

21 from the date of the wrongful act."), abrogated on other grounds as stated in Pascual v.

22 Matsumura, 165 F. Supp. 2d 1149, 1151-52 (D. Haw. 2001); accord Venegas v. Wagner, 704

23 F.2d 1144, 1146 (9th Cir. 1983) (per curiam).  The limitations period on a claim of false

24 imprisonment begins to run when the alleged false imprisonment ends.  Wallace, 549 U.S.

25 at 389.

26         Here, the alleged false arrest and unreasonable seizure occurred on January 11,

12

1   2008.  Thus, plaintiff's claims of false arrest and unreasonable seizure accrued on January 11,

2   2008, and the statute of limitations period ran on January 11, 2010.  Plaintiff raised these claims

3   as to the individual defendants on October 14, 2010, when he filed the Third Amended

4   Complaint.  Accordingly, plaintiff's claims of violations of Section 1983 premised on false arrest

5   and unlawful seizure are barred by the applicable two-year statute of limitations.[8]  Plaintiff's

6   claim of false imprisonment is likewise time-barred.  Plaintiff's alleged false imprisonment

7   ended when he was released from the county jail on January 12, 2008, and the two-year

8   limitations period on false imprisonment claim began to run that same day.  The limitations

9   period expired on January 12, 2010, and plaintiff did not raise a false imprisonment claim against

10  the individual defendants until October 14, 2010.  Thus, plaintiff's false imprisonment claim is

11  time-barred as to the individual defendants.

12          Second, plaintiff alleges that his due process rights were violated because he was

13  singled out in the January 11, 2008 incident as the only person involved who was not a "law

14  enforcer."[9]  (Third Am. Compl. ¶¶ 29, 34.)  He alleges that he was the "odd man out," and that

15  his rights were violated because he was the only person of the "four key players" who was taken

16  to jail that night.  (Id. ¶ 29.)  Plaintiff knew or had reason to know of the injury that is the basis of

17  his due process or equal protection claim on January 11, 2008, and thus the limitations period on

18

19          [8]  Plaintiff arguably could not have filed his claims on January 11, 2008, because he was still
20  being held at the county jail.  In any event, plaintiff could have filed his claims as early as January
    12, 2008, following his release from jail.

21          [9]  Although plaintiff attempts to allege a "class of one" due process claim, no such claim
22  exists.  "Class of one" claims pertain to an individual's rights of equal protection.  See, e.g., Enquist
    v. Ore. Dep't of Agric., 553 U.S. 591, 601 (2008) (noting that "an equal protection claim can in some
23  circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but
    instead claims that she has been irrationally singled out as a so-called 'class of one'"); Vill. of
24  Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam) ("Our cases have recognized
    successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she
25  has been intentionally treated differently from others similarly situated and that there is no rational
    basis for the difference in treatment.").  Nevertheless, plaintiff's errant characterization of his claim
26  is not material to resolution of defendants' arguments premised on the running of the statute of
    limitations.

13

that claim accrued on that date.  Plaintiff had the ability to file a claim as early as January 12, 2008, when he was released from jail.  The limitations period expired no later than January 12, 2010, but plaintiff first raised this claim against the individual defendants on October 14, 2010.  Accordingly, plaintiff's due process or equal protection claim is time-barred as to the individual defendants named in the Third Amended Complaint.

Third, plaintiff's Third Amended Complaint alleges, for the first time, a Section 1983 claim premised on the Eighth Amendment.  Plaintiff contends that his Eight Amendment rights were violated as a result of the "psychological torture" and deliberate indifference to medical needs allegedly imposed on him while he was being arrested and while he was detained at the county jail.  (See Third Am. Compl. ¶¶ 30, 34.)  As with the previously discussed alleged constitutional violations, plaintiff's Eighth Amendment claim accrued at the latest on January 12, 2008—the acts that plaintiff alleges give rise to his Eighth Amendment claims were performed during plaintiff's arrest and ended once plaintiff was released from jail on January 12, 2008.  Accordingly, the two-year limitations period on plaintiff's Eighth Amendment claim expired on January 12, 2010, and plaintiff did not raise this claim at all until October 14, 2010.  Thus, Plaintiff's Eighth Amendment claim is also time-barred.

Fourth, plaintiff alleges a claim of First Amendment retaliation, which asserts that several actions were taken against him as a result of his attempt to have criminal charges brought against the off-duty officer who allegedly assaulted plaintiff on January 11, 2008.  (See Third Am. Compl. ¶¶ 27, 34.)  Specifically, plaintiff alleges that he "was psychologically tortured, incarcerated, was denied medical attention, had false information reported about him, and this false information was set to a potential employer.  This information led to plaintiff being removed from consideration for employment with the State of California."  (Id. ¶ 27.)  In regards to the alleged retaliatory acts of psychological torture, incarceration, and denial of medical attention, plaintiff's Third Amended Complaint makes clear that those alleged acts occurred at the latest on January 12, 2008, and that plaintiff had the ability to file a claim in regards to those

1   acts as early as January 12, 2008.  Plaintiff did not assert these claims against the individual

2   defendants until October 14, 2010, and, accordingly, plaintiff's First Amendment retaliation

3   claim is time-barred as to the individual defendants to the extent that it is premised on allegations

4   of psychological torture, incarceration, or denial of medical attention.

5            In regards to plaintiff's allegation that he suffered retaliation when "false

6   information" was sent to his potential employer, CDCR, plaintiff's retaliation claim premised on

7   this alleged act is also time-barred.  Plaintiff's Third Amended Complaint alleges that plaintiff

8   became aware of this alleged act of retaliation in September 2008.  (See Third Am. Compl. ¶ 24

9   ("In September of 2008 plaintiff received a letter from the Department of Corrections and

10  Rehabilitation for the State of California," which "explained why [plaintiff] would no longer be

11  considered for positions he had applied for").)  Also attached to plaintiff's Third Amended

12  Complaint is a letter, dated September 11, 2008, from CDCR to plaintiff that is not presently

13  disputed by either party.  (Third Am. Compl., Ex. G.)  Through this letter, CDCR notified

14  plaintiff that his name was being removed from the eligibility list for positions as a "Youth

15  Correctional Counselor/Youth Correctional Officer/Correction Officer" because of his arrest for

16  disorderly conduct.  (Id.)  The letter briefly recounts that plaintiff was "in a restaurant screaming

17  that [he] wanted to be killed by a police officer," and further states: "Information received

18  revealed that you had been 'huffing' an inhalant/chemical called Toluene."  (Id.)  Regardless of

19  whether plaintiff agrees with the characterizations in the letter, the letter reflects that as of

20  September 11, 2008, plaintiff had notice that the purportedly false information about his arrest

21  and conduct on the night of January 11, 2008, had been transmitted to CDCR, plaintiff's

22  potential employer.  To the extent that plaintiff's First Amendment retaliation claim is premised

23  on the alleged transmittal of false information to CDCR, plaintiff's claim accrued on September

24  11, 2008, and the limitations period on that claim ran on September 11, 2010.  Again, plaintiff

25  did not raise this claims against the individual defendants until October 14, 2010 and, as a result,

26  plaintiff's retaliation claim is time-barred as to the individual defendants.

1          2.     The Limitations Period Was Not Tolled As to the Individual Defendants

2          In regards to tolling, plaintiff only contends that the two-year limitations period

3  governing his Section 1983 claims against Braziel, LaCosse, and Schneider should have been

4  tolled until February 12, 2009, which is the date that Braziel, the Chief of the Sacramento Police

5  Department, sent a letter to plaintiff regarding investigations into the January 11, 2008 incident.[10]

6  (Pl.'s Opp'n at 2; see also Third Am. Compl., Ex. I.)

7          Braziel's letter informed plaintiff that Braziel and his staff had reviewed the

8  events that occurred on January 11, 2008.  (See Third Am. Compl., Ex. I.)  It further informed

9  plaintiff that in addition to a field investigation on the night in question, a further investigation

10  had been conducted and a separate Internal Affairs investigation also occurred.  (Id.)  The letter

11  stated that plaintiff's statement was also taken by a detective.  (Id.)  Braziel concludes that he

12  was "confident that no wrongdoing or misconduct on the part of the Police Department or its

13  employees occurred."  (Id.)  Plaintiff disagrees with Braziel's conclusions and alleges in his

14  written opposition to defendants' motion that Braziel, LaCosse, and Schneider "began their role

15  in the cover-up of the very legal violations that caused the violations of plaintiff's federally

16  protected rights on that date," and thus "they could be named as defendant's [sic] as late as

17  February 11, 2011."  (Pl.'s Opp'n at 2.)

18          The undersigned concludes that the February 12, 2009 letter does not support

19  tolling the limitations period as to plaintiff's claims against the later-named individual

20  defendants.  The letter does not suggest that Braziel, LaCosse, or Schneider were involved in

21

22          [10]  Defendants address the issue of tolling, but further argue that plaintiff's claims do not
relate back to the original complaint.  Plaintiff does not respond to defendants' "relation back"
23  argument in his opposition or otherwise make an argument premised on the relation back doctrine.
In any event, the undersigned concludes that plaintiff's claims do not relate back to the original
24  complaint insofar as the individual defendants are concerned because, upon review of plaintiff's
various complaints, the individual defendants did not know and should not have known during the
25  applicable Rule 4(m) period that they would have been sued but for a "mistake" regarding the
identity of the proper party.  See Fed. R. Civ. P. 15(c)(1)(C); see also Krupski v. Costa Crociere S.
26  p. A., 130 S. Ct. 2485, 2493-94 (2010).

causing the constitutional injuries alleged in the Third amended Complaint.  As chronicled

above, those injuries consist of the alleged false arrest of plaintiff, the unlawful seizure and false

imprisonment of plaintiff, the singling out of plaintiff in a "class of one" for disparate treatment

during the January 11, 2008 incident, the imposition of "psychological torture" on plaintiff at the

county jail, the denial of medical attention at the county jail, and retaliation against plaintiff in

the form of psychological torture, incarceration, denial of medical attention, and the transmittal

of false information about plaintiff.  Plaintiff was aware of these injuries long before Braziel

transmitted the February 12, 2009 letter to plaintiff, and the letter does not implicate Braziel,

LaCosse, or Schneider in those complained-of injuries.  A naked allegation of a cover-up

provides no basis for tolling the statute of limitations.  Accordingly, plaintiff is not entitled to

tolling on his claims against the newly named individual defendants.[11]

>    D.   Dismissal of Braziel, Lacosse, and Schneider for Lack of Personal Involvement

In addition to their arguments premised on the running of the applicable statute of

limitations, defendants also move to dismiss defendants Braziel, LaCosse, and Schneider from

this action on the grounds that plaintiff has not alleged how Braziel, LaCosse, and Schneider

were personally involved in the civil rights violations alleged in the Third Amended Complaint.

Defendants' argument is well-taken.

As noted above, "[t]o state a claim under § 1983, a plaintiff must allege two

essential elements: (1) that a right secured by the Constitution or laws of the United States was

violated, and (2) that the alleged violation was committed by a person acting under the color of

---

[11]  In a slightly different context, a judge of the Northern District of California concluded that where a "cover-up" theory of Section 1983 liability is alleged, such a theory is only viable where the cover-up itself deprived a plaintiff of his or her constitutional rights.  See Johnston v. County of Sonoma, No. C 10-03592 CRB, 2011 WL 855934, at *3 (N.D. Cal. Mar. 9, 2011) (unpublished) (stating that "[a] 'cover up' theory of section 1983 liability is only viable where the cover-up itself deprives a plaintiff of constitutional rights").  In Johnston, the court concluded that because the constitutional injuries underlying the complaint had already occurred prior to the acts allegedly taken in furtherance of the cover-up, a section 1983 claim could not be asserted against a named defendant who was in essence alleged to be an "after-the-fact" conspirator.  See id.

1   State law." Long, 442 F.3d at 1185.  In order for a plaintiff to state cognizable claims against

2   individuals under Section 1983, a plaintiff must allege how each individual defendant was

3   personally involved in the deprivation of his civil rights.  See, e.g., James v. Rowlands, 606 F.3d

4   646, 653 n.3 (9th Cir. 2010) ("Of course, § 1983 imposes liability on a defendant only if he or

5   she personally participated in or directed a violation."); Jones v. Williams, 297 F.3d 930, 934

6   (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section

7   1983 there must be a showing of personal participation in the alleged rights deprivation . . . .");

8   Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) ("A plaintiff must allege facts, not

9   simply conclusions, that show that an individual was personally involved in the deprivation of

10  his civil rights.  Liability under § 1983 must be based on the personal involvement of the

11  defendant.").

12          Here, plaintiff's Third Amended Complaint does not allege how Braziel, LaCosse,

13  or Schneider were personally involved in the violations of plaintiff's civil rights.  Accordingly,

14  plaintiff's claims against these three individual defendants are subject to dismissal.  At most,

15  plaintiff alleges in conclusory fashion that a vast conspiracy among different law enforcement

16  agencies existed that gives rise to liability for all of the named defendants.  This sort of

17  conclusory allegation is insufficient to establish a conspiracy claim under Section 1983.[12]

18  Conclusory allegations of a violation of Section 1983 or a conspiracy to violate Section 1983 will

19  not survive a motion to dismiss.  See, e.g., Simmons v. Sacramento County Superior Court, 318

20  F.3d 1156, 1161 (9th Cir. 2003) (affirming dismissal of plaintiff's second amended complaint as

21  a result of plaintiff's "conclusory allegations" of a conspiracy to deprive him of his constitutional

22  rights in violation of Section 1983).  Nothing in the Third Amended Complaint suggests that

23  plaintiff could further amend his complaint to state claims against Braziel, LaCosse, and

24

25          [12]  Plaintiff's allegation that defendants engaged in a conspiracy under 28 U.S.C. § 1985(2)
    is addressed below, and the undersigned recommends that plaintiff's Section 1985(2) claim be
26  dismissed with prejudice as to all defendants.

1  Schneider.  In any event, the undersigned already concluded above that any such claims are time-

2  barred.  Thus, the undersigned recommends that Braziel, LaCosse, and Schneider be dismissed

3  from this action with prejudice.

4         E.      <u>Plaintiff's Eighth Amendment Claim Is Subject To Dismissal</u>

5        Defendants also move to dismiss plaintiff's claim that is premised on an alleged

6  violation of plaintiff's Eighth Amendment rights.  Plaintiff's Eighth Amendment claim alleges

7  that defendants inflicted cruel and unusual punishment upon him in the form of "psychological

8  torture" and the deliberate denial of medical care.  (<u>See</u> Third Am. Compl. ¶¶ 1, 30, 34.)  More

9  specifically, plaintiff alleges that at the time he was taken to the county jail, he "had a head injury

10  and should have been examined and monitored for his protection." (<u>Id.</u> ¶ 30.)  Additionally,

11  plaintiff alleges that he "had deep abrasions to his back which should have been disinfected and

12  dressed to avoid infection." (<u>Id.</u>)  Finally, plaintiff alleges that he "received a rupture to his

13  lower abdomen which was not apparent at the time but soon after herniated." (<u>Id.</u>)  Defendants

14  argue that plaintiff's Eighth Amendment claim must be dismissed with prejudice because

15  plaintiff has not alleged facts demonstrating that he was a convicted prisoner at the time he was

16  subjected to some form of punishment.[13]  (Defs.' Mot. to Dismiss/Strike at 9.)

17        Defendants are correct that the protections of the Eighth Amendment only attach

18  to convicted and sentenced prisoners, not pretrial detainees.  <u>See</u> <u>Graham v. Connor</u>, 490 U.S.

19  386, 392 n.6 (1989) (noting that the Eight Amendment's protections attach after conviction and

20  sentencing); <u>accord</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 n.16 (1979); <u>see also</u> <u>Gibson v. County of</u>

21  <u>Washoe</u>, 290 F.3d 175, 1187 (9th Cir. 2002) ("Because Gibson had not been convicted of a

22  crime, but had only been arrested, his rights derive from the due process clause rather than the

23  Eighth Amendment's protection against cruel and unusual punishment."); <u>Jones v. Johnson</u>, 781

24

25      [13]  Defendants also argue that plaintiff was never given leave to add his claim premised on
the Eighth Amendment. (Defs.' Mot. to Dismiss/Strike at 10.)  As discussed above, defendants read
the court's prior order too narrowly.  In any event, had plaintiff sought leave to amend his pleading

26  to add the Eighth Amendment claim, the undersigned likely would have granted such leave.

1    F.2d 769, 771 (9th Cir. 1986) ("Because Jones was a pretrial detainee and not a convicted

2    prisoner at the time of the claimed wrongful conduct, his § 1983 action for inadequate medical

3    treatment arises from the due process clause of the fourteenth amendment and not from the

4    eighth amendment prohibition against cruel and unusual punishment.").  Because plaintiff alleges

5    that he was subjected to psychological torture and was deliberately denied medical attention

6    while he was a pretrial detainee, and not a convicted and sentenced prisoner, his Section 1983

7    claim premised on the Eighth Amendment fails as a matter of law.

8           However, a pretrial detainee may allege a claim for deliberate indifference to

9    medical needs that is premised on the Due Process Clause of the Fourteenth Amendment, and

10    essentially the same standards apply to claims of deliberate indifference to medical needs brought

11    by prisoners and pretrial detainees.  See Bell, 441 U.S. at 535 n.16 (noting that the "Court of

12    Appeals properly relied on the Due Process Clause rather than the Eighth Amendment in

13    considering the claims of pretrial detainees"); see also Clouthier v. County of Contra Costa, 591

14    F.3d 1232, 1242 (9th Cir. 2010) ("In light of the Supreme Court's rulings that conditions of

15    confinement violate pretrial detainees' Fourteenth Amendment rights if the conditions amount to

16    punishment, and that failure to prevent harm amounts to punishment where detention officials are

17    deliberately indifferent, we have concluded that the 'deliberate indifference' standard applies to

18    claims that correction facility officials failed to address the medical needs of pretrial detainees.")

19    (citations omitted); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998) ("Because pretrial

20    detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the

21    Eighth Amendment, . . . we apply the same standards.")  In Lolli v. County of Orange, 351 F.3d

22    410 (9th Cir. 2003), the Ninth Circuit Court of Appeals summarized the standards used to

23    evaluate claims of deliberate indifference to medical needs asserted by prisoners and pretrial

24    detainees:

25           [U]nder traditional Eighth Amendment standards used in Fourteenth
             Amendment claims such as this one, [appellant] must show that he was

26           (1) "confined under conditions posing a risk of 'objectively, sufficiently

serious' harm" and (2) "that the officials had a 'sufficiently culpable state of mind' in denying the proper medical care." "A defendant is liable for denying needed medical care only if he 'knows of and disregards an excessive risk to inmate health and safety.'" "In order to know of the risk, it is not enough that the person merely 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, [ ] he must also draw that inference.' . . . But if a person is aware of a substantial risk of serious harm, a person may be liable for neglecting a prisoner's serious medical needs on the basis of either his action or his inaction." "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment."

Id. at 418-19 (citations and footnote omitted; third and fourth modifications in original).

Here, the undersigned need not assess whether plaintiff's Third Amended Complaint states a cognizable "deliberate indifference" claim under the Fourteenth Amendments—or, more appropriately whether plaintiff should be given leave to further amend his operative complaint to state a claim under the Fourteenth Amendment.  Further amendment would be futile as to the individual defendants named in the Third Amended Complaint because, as discussed above: (1) plaintiff's claims premised on his treatment at the county jail are time-barred as to all of the individual defendants;[14] and (2) as to Braziel, LaCosse, and Schneider, plaintiff has not alleged how these defendants were personally involved in the alleged violation of plaintiff's due process rights while plaintiff was at the jail.  In regards to the City's potential liability, which is further addressed below, plaintiff's claim fails under the pleading standards attendant to claims of municipal liability as stated in Monell and subsequent cases.

      F.    Plaintiff's Section 1985(2) Claim Is Subject To Dismissal With Prejudice

Plaintiff also alleges a new claim pursuant to 42 U.S.C. § 1985(2), which alleges that defendants engaged in a conspiracy to interfere with his civil rights by obstructing justice. (Third Am. Compl. ¶ 38.)  Plaintiff's Section 1985(2) claim relies on the "equal protection"

---

[14] Defendants have not argued that plaintiff's claim premised on the alleged unconstitutional denial of medical care is time-barred as to the City.

1  component of Section 1985(2).[15]  (See Third Am. Compl. ¶ 38 (alleging a conspiracy to obstruct

2  justice with the intent to deprive plaintiff of equal protection of the laws).)

3          In relevant part, Section 1985(2) provides a claim for relief "if two or more

4  persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any

5  manner, the due course of justice in any State or Territory, with intent to deny to any citizen the

6  equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting

7  to enforce, the right of any person, or class of persons, to the equal protection of the laws."  42

8  U.S.C. § 1985(2).  The Ninth Circuit Court of Appeals has held that the second clause of Section

9  1985(2), i.e., the equal protection component, requires that a plaintiff allege "class-based

10  animus" to state a legally sufficient claim.  Portman v. County of Santa Clara, 995 F.2d 898, 909

11  (9th Cir. 1993); see also Bagley, 923 F.2d at 763 ("We have held, however, that [a] cognizable

12  claim under [the second part of § 1985(2) ] requires an allegation of a class-based, invidiously

13  discriminatory animus" (citations and quotation marks omitted; modification in original).), cert.

14  denied, 502 U.S. 1091 (1992); accord Whitehorn v. FCC, 235 F. Supp. 2d 1092, 1101 (D. Nev.

15  2002) (noting the requirement of "class-based or racial animus"), aff'd, 63 Fed. Appx. 346 (9th

16  Cir. 2003).

17          Plaintiff has not alleged membership in a protected class and has not alleged any

18  class-based animus or invidious discrimination that would support a Section 1985(2) equal

19  protection claim.  Furthermore, nothing in plaintiff's operative complaint suggests that he could

20  cure this deficiency if given leave to amend.  Accordingly, the undersigned recommends that

21  plaintiff's Section 1985 claim be dismissed with prejudice as to all defendants, including the

22  City.

23  _____

24  [15]  The Ninth Circuit Court of Appeal has clarified that "Section 1985(2) has two separate
parts.  The first part of the subsection addresses conspiracies which deter by force, intimidation, or

25  threat a party or witness in federal court.  The second part of the subsection creates a federal right
of action for damages against conspiracies which obstruct the due course of justice in any State or

26  Territory with intent to deny equal protection."  Bagley v. CMC Real Estate Corp., 923 F.2d 758,
763 (9th Cir. 1991) (citations and quotation marks omitted).

G.      Plaintiff's Municipal Liability Claims Against the City Are Subject to Dismissal

Defendants move to dismiss plaintiff's claims against the City on the grounds that plaintiff has not met the specific pleading standards that govern claims of municipal liability asserted pursuant to Section 1983.  The undersigned concludes that plaintiff has not pled a plausible claim of municipal liability and recommends that plaintiff's municipal claims against the City be dismissed with prejudice.

A municipality may be held liable for civil rights violations under Section 1983, but the standards governing the liability of a municipality materially differ from those that govern the liability of individuals who acted under color of state law.  Relevant here, in Monell v. Department of Social Services, 436 U.S. 658, the Supreme Court limited municipal liability and held that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  Id. at 691.  Instead, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  Id. at 690 (footnote omitted).  The Court further stated that "it is when execution of a [local] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  Id. at 693; see also Bd. of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 403 (1997) ("[W]e have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury.").

The Ninth Circuit Court of Appeals has held that in order to establish municipal liability, "the plaintiff must establish: (1) that he [or she] possessed a constitutional right of which he [or she] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy

1   was the moving force behind the constitutional violation."  <u>Miranda v. City of Cornelius</u>, 429

2   F.3d 858, 868 (9th Cir. 2005) (citation and quotation marks omitted, modification in original);

3   <u>accord</u> <u>Levine v. City of Alameda</u>, 525 F.3d 903, 907 (9th Cir. 2008).  With respect to the last

4   element, "[t]here must be a direct causal link between a municipal policy or custom and the

5   alleged constitutional deprivation."[16]  <u>Villegas v. Gilroy Garlic Festival Ass'n</u>, 541 F.3d 950, 957

6   (9th Cir. 2008) (en banc) (citation and quotation marks omitted).

7              Here, plaintiff has not pled a plausible claim under <u>Monell</u>.  Plaintiff alleges that

8   "police officers in general have a well publicized custom of protecting (having the backs) of their

9   fellow officers."  (Third Am. Compl. ¶ 31; <u>see also</u> <u>id.</u> ¶ 35 (alleging that "the City of

10  Sacramento has a policy, if perhaps unwritten, or custom of protecting police officers from

11  responsibility for their misconduct").)  He further alleges:

12              The no doubt unwritten policy or custom of protecting Sacramento City
             Police Officers from responsibility for their misconduct by the City of
13           Sacramento and its Police Department was and is the 'moving force'
             behind the violation of plaintiff's Constitutionally protected rights.  This is
14           because when Sacramento Police Officers know that if they engage in
             misconduct or trample citizen's rights they will be protected by the
15           Sacramento City Police Department, the Police Officers Union, and
             ultimately the City of Sacramento.  This is what is happening in this case.
16           This custom or unwritten policy that exists in city police departments and
             other law enforcement agencies is the poison in the system that is a by
17           [sic] product of maintaining group cohesion in these departments.

18  (<u>Id.</u> ¶ 32; <u>see also</u> <u>id.</u> ¶ 37 ("The attitude of police officers that they are insulated from

19  responsibility for their misconduct by the Sacramento Police Department, the Police Officers

20  Union, and ultimately the City of Sacramento was the moving force behind the violation of

21  plaintiff's constitutional rights.").)

22

23       [16]  The Court of Appeals has recognized that in addition to showing that a constitutional
    violation resulted from an express municipal policy or custom, "[a] plaintiff may also establish
    municipal liability by demonstrating that (1) the constitutional tort was the result of a longstanding
24  practice or custom which constitutes the standard operating procedure of the local government entity;
    (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged
25  action constituted official policy; or (3) an official with final policy-making authority delegated that
    authority to, or ratified the decision of, a subordinate."  <u>Price v. Sery</u>, 513 F.3d 962, 966 (9th Cir.
26  2008) (citation and quotation marks omitted).

1    In short, plaintiff premises his municipal claims on a generalized custom among

2 law enforcement agencies of not holding officers accountable for alleged wrongdoing—which is

3 not even limited to the Sacramento City Police Department—which therefore motivated police

4 officers in this case to violate plaintiff's constitutional rights.  The facts alleged by plaintiff do

5 not support that the purported custom referenced by plaintiff "is so widespread as to have the

6 force of law."  See Brown, 520 U.S. at 404 (stating that "an act performed pursuant to a 'custom'

7 that has not been formally approved by an appropriate decision maker may fairly subject a

8 municipality to liability on the theory that the relevant practice is so widespread as to have the

9 force of law").  The undersigned concludes that plaintiff has not pled a plausible claim under

10 Monell and, accordingly, recommends that plaintiff's municipal liability claim be dismissed with

11 prejudice.  Plaintiff has already been given leave to amend by this court in regards to his

12 municipal liability claim, and nothing in the Third Amended Complaint suggests that plaintiff

13 can cure this claim though amendment.

14 IV.    CONCLUSION

15    For the foregoing reasons, IT IS HEREBY ORDERED that defendants' request

16 for judicial notice is denied as moot.

17    IT IS FURTHER RECOMMENDED that:

18    1.    Defendants' motion to dismiss (Dkt. No. 18) be granted and that all claims

19 against defendants be dismissed with prejudice.

20    2.    Defendants' motion to strike be denied.

21    3.    The Clerk of Court be directed to enter judgment in favor of defendants,

22 close this case, and vacate all future dates in this case.

23    These findings and recommendations are submitted to the United States District

24 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen

25 days after being served with these findings and recommendations, any party may file written

26 objections with the court and serve a copy on all parties.  Id.; see also E. Dist. Local Rule 304(b).

Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED AND RECOMMENDED.

DATED:  July 15, 2011

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE